**JOHN L. BURRIS, Esq. SBN 69888**
**LATEEF GRAY, Esq. SBN**
**MELISSA C. NOLD, Esq. SBN 301378**
**LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone:  (510) 839-5200
Facsimile:   (510) 839-3882
john.burris@johnburrislaw.com
lateef.gray@johnburrislaw.com
melissa.nold@johnburrislaw.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLGA CORTEZ, an individual; NEMESIO CORTEZ, an individual; K.J.C., by and through her Guardian Ad Litem OLGA CORTEZ; and K.M.C. by and through her Guardian Ad Litem OLGA CORTEZ,<br><br>                    Plaintiffs,<br>         v.<br><br>CITY OF OAKLAND, a municipal corporation; ROLAND HOLMGREN, individually and in his official capacity as Police Lieutenant for the CITY OF OAKLAND; CULLEN FAETH, individually and in his official capacity as Police Officer for the CITY OF OAKLAND; JOE TURNER, individually and in his official capacity as Police Sergeant for the CITY OF OAKLAND; TREVOR STRATTON, individually and in his official capacity as Police Officer for the CITY OF OAKLAND; BRYAN BUDGIN, individually and in his official capacity as Police Officer for the CITY OF OAKLAND; and DOES 1-50, inclusive, individually, jointly and severally,<br>                    Defendants. | CASE NO.:<br><br><br>COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND PENDENT TORT CLAIMS<br><br>JURY TRIAL DEMANDED |

### INTRODUCTION

1. This case arises out of the bizarre circumstances of December 7, 2015, when four (4) off-duty Oakland Police Officers terrorized the Cortez family, at their home,

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, STATE LAW CAUSES OF ACTION & DAMAGES - 1

followed by an attempted multi-level cover up by the Oakland Police Department. The normally quiet Oakland hills neighborhood, erupted in chaos after the Cortez family heard a loud banging on their front door, followed by an irate, intoxicated man trying to force himself into the Cortez home. Mr. and Mrs. Cortez exited the house and attempted to detain the irate, intoxicated man, who then attacked the couple, grabbing and knocking Mrs. Cortez to the ground and kicking Mr. Cortez multiple times. The man was later identified as Oakland Police Officer Cullen Faeth. During the attack, another yet-to-be-identified Oakland Police Officer ran out from the Cortez's backyard and threatened the family with what appeared to be a simulated gun underneath his shirt, before fleeing the scene. In an act of tremendous bravery, Mr. Cortez held assailant Cullen Faeth on the ground, until City of Oakland police arrived and arrested him.

2. Later that night, around midnight, the Cortez family was awakened by several Oakland police supervisors and officers at their home. The supervisors and officers separated the couple and attempted to convince Mr. and Mrs. Cortez that no crime had occurred. That same night, at around 3:00 a.m., another round of Supervisors and officers arrived to again try and convince the family that no criminal activity had occurred earlier. At no point during the two separate, late night visits to the Cortez house did anyone notify the family that their assailants were police officers.

3. In the days following the incident, Mrs. Cortez reached out to the Oakland Police Department, terrified and desperate for answers. Mrs. Cortez was assured by Oakland Police Lieutenant Roland Holmgren that the men, who were later identified as Oakland Police Officers, were only being silly and posed no threat to the family. Then, when Mrs. Cortez was not satisfied with his response and continued to inquire about the officers, the incident, and related criminal charges, Lieutenant Holmgren brushed off Mrs. Cortez and stopped all communication with her. The family was forced to hire an attorney after the Police Department refused to provide the family a copy of the police report. Finally, six weeks after this terrifying attack, the department released a copy of the police report at the insistence of the family attorney. The police report was redacted to conceal the identity of all but one of the four suspected assailants, all of whom were Oakland Police Officers on the date of the incident. To date, the department continues to conceal the identity of the officer who

threatened the family with a stimulated firearm.

threatened the family with a stimulated firearm.

## JURISDICTION

4. This action arises under Title 42 of the United States Code, Section 1983. Title 28 of The United States Code, Sections 1331 and 1343 confers jurisdiction upon this Court. The unlawful acts and practices alleged herein occurred in Oakland, California, which is within this judicial district. Title 28 United States Code Section 1391(b) confers venue upon this Court.

## PARTIES

5. At all times mentioned herein, Plaintiff OLGA CORTEZ (hereinafter "MRS. CORTEZ"), has been and is a resident of Oakland, California. MRS. CORTEZ is acting her individual capacity and as Guardian Ad Litem for minors K.M.C. and K.J.C.

6. At all times mentioned herein, Plaintiff NEMESIO CORTEZ. (hereinafter "MR. CORTEZ"),has been and is a resident of Oakland, California. MR. CORTEZ is acting in his individual capacity.

7. At all times mentioned herein, Plaintiff K.M.C. (hereinafter "K.M.C"), sues in her individual capacity, through her Guardian Ad Litem OLGA CORTEZ.

8. At all times mentioned herein, Plaintiff K.J.C. (hereinafter "K.J.C."), sues in her individual capacity, through her Guardian Ad Litem OLGA CORTEZ.

9. At all times mentioned herein, Defendant CITY OF OAKLAND (hereinafter "CITY") is a municipal corporation, existing under the laws of the State of California. The CITY OF OAKLAND Police Department operates under the supervision of the CITY OF OAKLAND. At all times mentioned herein, Defendant ROLAND HOLMGREN, (hereinafter "DEFENDANT HOLMGREN"), was a Police Lieutenant for the City of Oakland Police Department, and is sued individually and in his official capacity.

10. At all times mentioned herein, Defendant CULLEN FAETH (hereinafter "DEFENDANT FAETH"), was a Police Officer for the City of Oakland Police Department, and is sued individually and in his official capacity.

11. At all times mentioned herein, Defendant JOE TURNER, (hereinafter "DEFENDANT TURNER"), was a Police Officer for the City of Oakland Police Department, and is sued individually and in his official capacity.

12. At all times mentioned herein, Defendant TREVOR STRATTON, (hereinafter "DEFENDANT STRATTON"), was a Police Officer for the City of Oakland Police Department, and is sued individually and in his official capacity.

13. At all times mentioned herein, Defendant BRYAN BUDGIN, (hereinafter "DEFENDANT BUDGIN"), was a Police Officer for the City of Oakland Police Department, and is sued individually and in his official capacity.

14. Plaintiffs are ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sue said defendants by such fictitious names.  Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.  Plaintiffs believe and allege that each of the DOE defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth.  Each defendant proximately caused injuries and damages because of their negligence, breach of duty, negligent supervision, management or control, violation of public policy and/or use of excessive force.  Each defendant is liable for his/her personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control or upon any other act or omission.  Plaintiffs will ask leave to amend their complaint subject to further discovery.

15. In engaging in the conduct alleged herein, Defendant police officers and supervisors acted under the color of law and in the course and scope of their employment with City of Oakland Police Department.  In engaging in the conduct described herein, Defendant police officers exceeded the authority vested in them as police officers under the United States and California Constitutions, and as employees of City of Oakland Police Department.

16. Plaintiffs contend that the City of Oakland is liable for all state law causes of action under the theory of Respondeat Superior, wherein damages occurred while City of Oakland employees were engaged in the performance of their job duties.

## DAMAGES

17. As a consequence of Defendants' violation of Plaintiffs' federal civil rights under 42 U.S.C. §1983 and 1985, and various state law causes of actions, Plaintiffs were mentally and emotionally injured and damaged.

18. Plaintiffs found it necessary to engage the services of private counsel to vindicate the rights of Plaintiffs under the law.  Plaintiffs are therefore entitled to an award of attorney's fees and/or costs pursuant to statute(s) in the event that they are the prevailing parties in this action under 42 U.S.C. § 1983, 1985-86 and 1988.

## STATEMENT OF FACTS

19. On December 7, 2015, at approximately 9:30 p.m., Plaintiff Olga Cortez was getting out of the shower and preparing to go to bed, at her home, located at 25 Fieldbrook Place, in Oakland, California.

20. Olga Cortez was startled by a loud banging at her front door. The banging woke up Plaintiff Mr. Nemesio Cortez, who was sleeping upstairs. Olga Cortez hurried to the front door in her bathrobe, while her husband was getting out of bed to investigate the loud noise. Olga Cortez could see an unfamiliar white male, later identified as Defendant Cullen Faeth, through the glass portion of the door. Faeth tried to open the locked door and was violently shaking the door handle and pounding on the door, trying to gain entry into the house.  Olga Cortez asked Faeth what he wanted and he told her to "open the fucking door", saying that he wanted to speak to the residents.  Faeth kept yelling, "Let me in."

21. Nemesio Cortez joined his wife at the door. Minor Plaintiffs K.M.C. and K.J.C. were awoken by the noise and came down to find out what was happening. Olga Cortez feared for her children's safety and told them to go back to their rooms for their safety. Mr. and Mrs. Cortez firmly and repeatedly told Faeth to leave, but he refused to leave their property and continued to try and gain entry.

22. Olga Cortez believed Faeth was trying to commit a home invasion robbery, and ran to call the City of Oakland Police Department for emergency assistance. Nemesio Cortez cracked the door open to tell Faeth to leave, and Faeth forcefully tried to push the door open and gain entry. Instead of allowing Faeth to gain entry, Nemesio Cortez stepped outside to protect his family and prevent the intruder from coming into his home to attack his wife and daughters. While Nemesio Cortez was trying to detain Faeth for the police's arrival, Faeth kicked Nemesio Cortez in the stomach multiple times.

23. Olga Cortez went outside with her husband and Faeth started to walk towards their side yard. Suddenly, a second, yet-to-be identified man came running out of their backyard, from their

side gate of their private property. The second man ran up their driveway. As the second man was passing Olga Cortez, he made a gesture simulating a gun pointed at her from underneath his shirt. Olga Cortez noticed her children standing in the front doorway crying and comforting one another, afraid for their and their mother's lives. Then, this second man ran away from the house and up the street, as documented by a neighbor's surveillance camera.

24. Nemesio Cortez was standing by Faeth, trying to prevent him from fleeing before the police could arrive. As Olga Cortez walked back near her husband, Faeth leaped towards Olga Cortez and violently grabbed her in a bear hug type hold. The intruder squeezed Olga Cortez's body close to his and knocked her onto the concrete, while she was only wearing a short bathrobe, exposing her nude lower body. Nemesio Cortez pulled Faeth off of his wife and held him down to await the arrival of the police. Olga Cortez was embarrassed and humiliated by her naked body being exposed to a strange man, in front of her husband, and ran back in her house to change clothes.

25. Faeth initially resisted Nemesio Cortez and tried to flee, but neighbors heard the commotion and helped Nemesio Cortez keep the man detained until the police arrived. The couple told Faeth the police were on their way and he was not going to leave. When the man learned that the police were on their way he began yelling, "fuck the police." Mr. and Mrs. Cortez noticed that Faeth had a strong odor of alcoholic beverages emanating from his person. The couple also noticed that Faeth had a glassy eyed, wild stare, which they believed to be characteristic of a person using illicit drugs.

26. Yet-to-be-identified City of Oakland Police personnel arrived at the Cortez house and took the first man into custody. Onlookers took cell phone photos and cell phone video of the wild eyed Faeth being taken into custody. After the man was placed in the police car, he began violently and repeatedly banging his head on the car window, which was caught on cellphone video. The second man was nowhere to be found. Yet-to-be identified City of Oakland Police Officers took statements from Mr. and Mrs. Cortez and their neighbors and also took photographs of Mr. and Mrs. Cortez's' injuries.  These yet-to-be identified officers then left.

27. At the time of the incident, witnesses recount seeing a man running up the middle of the street.  This man was stopped by the first responding City of Oakland Police Department patrol car, where he leaned into the police car, appeared to speak to the officer and was then permitted to leave the crime scene. This fleeing second man got into a non-police vehicle,

occupied by one or more of the following individuals: Joe Turner, Trevor Stratton and/or Bryan Budgin. The three men fled the scene.

28. On December 8, 2015, at around 12:30 a.m. the Cortez family was terrified by another knock on their door. This time, three Oakland Police personnel arrived at the Cortez house and wanted to speak to Mr. and Mrs. Cortez. The personnel identified themselves as a Sergeant, a Captain and an Officer and asked Mrs. Cortez to briefly explain to the Captain what happened, while strongly suggesting that Mr. and Mrs. Cortez were mistaken in their understanding of the events. Mr. and Mrs. Cortez thought it was strange that a Police Captain came out to their home to investigate.

29. On December 8, 2015, at around 12:30 a.m., Oakland Police Officers and crime scene technicians went to the residence located at 22 Fieldbrook and wanted to review the owner's surveillance video during the time of the above incident. The property owner was present while the officers were reviewing the surveillance video. The surveillance video showed a man running past their home, while the owner's minor son was sitting in his parked car. The man is then seen running away from the cul de sac.

30. On December 8, 2015, at approximately 3:30 a.m., City of Oakland Police Officers arrived at the 22 Fieldbrook Drive again, and asked the owner's minor child to identify a possible suspect, related to the Cortez incident. The minor had seen two strange men in front of the Cortez house, just prior to the incident. The minor was then driven away from the house and shown a yet-to-be-identified man, who appeared to be Middle Eastern, and did not even remotely resemble either of the men involved or described. Upon information and believe, Claimants contend that the City of Oakland Police Department was already aware of the identity of the second man at the time of the in-field identification and had no legal basis for conducting an in-field identification of the unidentified man or requesting the assistance of the minor.

31. On December 8, 2015, at approximately 3:30 a.m., the Cortez family was once again startled by another knock on their front door. This time, five more Oakland Police Department officers and supervisors arrived at the Cortez residence and wanted Mr. and Mrs. Cortez to reenact the incident. The officers wanted Mr. and Mrs. Cortez to be interviewed separately. During Olga Cortez's interview, officers were trying to get her to change her statement and relay the events in a way that would be more favorable to the man who was arrested. An

officer tried to convince Olga Cortez to change her story and relay that the first man was simply knocking on the front door, instead of the reality that he was banging, rattling the door, pushing the door and demanding entry. The officer was also trying to get Olga Cortez to say that the first man simply knocked her over while falling down, instead of the reality that the man put both arms around her in a bear hug and knocked her to the ground. Mr. and Mrs. Cortez felt violated when asked to recreate their terrifying experience and confused by the officers' attempting to get them to sanitize their story. The officers would not answer any questions about the suspect.

32. For the next two weeks, Olga Cortez spoke to numerous Oakland Police Department personnel and supervisors, who refused to provide her any additional information about this incident. Olga Cortez, who is a probation officer, heard rumors that the two men were City of Oakland police officers. After calling and inquiring about the incident and identity of the individuals, City of Oakland Police Department Lieutenant Ronald Holmgren told Mrs. Cortez that the two men were City of Oakland officers who "mistakenly went to her house" looking for a party. Olga Cortez relayed her family's terror and how she felt violated, but Lieutenant Holmgren brushed off her concerns and said the officers were just "being silly." Lieutenant Holmgren promised Olga Cortez a personal apology once the investigation was complete; an apology that never came. The Cortez family finally received a heavily redacted copy of the incident report after the family attorney demanded that the department provide an official response to the family's requests.

33. To add egregious insult to injury, Olga Cortez confirmed that the men who were terrorizing her family are Oakland Police Officers, who were accompanied by two accomplice officers who acted as a getaway car for the second fleeing suspect. The men who were sworn to serve Oakland's citizens were the source of an innocent family's terrifying experience. The man banging on the Cortez's front door was later identified as City of Oakland Police Officer Cullen Faeth. The other involved parties were later identified as Sergeant Joe Turner, Officer Bryan Budgin and Officer Trevor Stratton. Two weeks prior to this incident, Sergeant Joe Turner shot and killed Richard Perkins, under suspicious circumstances. The incident report identified Officer Cullen Faeth as a suspect, but failed to identify the other officer, who menaced the Cortez family with a simulated firearm, despite his participation in the reign of

terror against the Cortez family. To date, the identity of the City of Oakland Police Officer who trespassed and threatened the family has not been revealed.

34. As a result on this incident, City of Oakland Police Department revealed that the four named Defendant City of Oakland Police Officers were placed on paid leave.

35. During the incident, Officer Cullen Faeth grabbed Olga Cortez so violently that he left fingerprint contusions on both of her arms. Olga Cortez's leg was bruised and injured from Officer Cullen Faeth violently knocking her down to the concrete. Nemesio Cortez's stomach was injured, resulting in an aggravated hernia, which required surgery. The Cortez family was forced to seek professional family counseling due to the emotional toll of this terrifying ordeal and Post-Traumatic Stress Disorder related to this harrowing ordeal. The Cortez children now suffer from nightmares and are afraid to be in their home. The entire family is constantly afraid and fearful of the police coming back to their home to harm or harass them again. Their terror was intensified after learning that the offenders in this unwarranted invasion were Oakland Police Officers, including supervisory personnel that appear to be omitted from the official reporting of the incident. This incident has caused shame and ridicule for the Cortez family, who have been re-victimized by shameless rumors surrounding this incident.

36. Defendant Officer Faeth was eventually charged with battery and trespass for his role in this incident, a slap on the wrist compared to the damage he caused the Cortez family. To date, the second officer who trespassed and threatened the Cortez family has not been charged or identified.

## FIRST CAUSE OF ACTION

### (Monell – 42 U.S.C. section 1983)

(All Plaintiffs Against CITY OF OAKLAND and DOES 26-50)

37. Plaintiffs hereby re-allege and incorporates by reference herein paragraphs 1 through 36 of this Complaint.

38. Plaintiffs are informed and believe and thereon allege that high-ranking City of Oakland officials, including high-ranking police supervisors and DOES 26 through 50, and/or each of them, knew and/or reasonably should have known about the repeated acts of misconduct by Oakland Police Officers, both on and off duty.

39. Despite having such notice, Plaintiffs are informed and believe and thereon allege that City of Oakland and DOES 26-50, and/or each of them, approved, ratified, condoned, encouraged, sought to cover up, and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by the Oakland Police Department, for officers both on and off duty, which brought about Defendants HOLMGREN, FAETH, TURNER, BUDGIN, STRATTON and DOES 1-50 unlawfully attacking the Cortez family and/or subsequently attempting to conceal the identity of the Oakland Police Officers responsible for engaging in criminal acts against the Cortez family.

40. Plaintiffs are further informed and believe and thereon allege that as a result of the deliberate indifference, reckless and/or conscious disregard of the misconduct by Defendants HOLMGREN, FAETH, TURNER, BUDGIN, STRATTON and DOES 1-50 and/or each of them, Defendants City of Oakland and/or DOES 26-50 ratified and encouraged these officers to continue their course of misconduct.

41. Plaintiffs further allege that Defendants City of Oakland and DOES 26-50 and/or each of them, were on notice of the Constitutional defects in their training, supervision and discipline of Oakland police officers.

42. The aforementioned acts and/or omissions and/or deliberate indifference by high ranking City of Oakland officials, including high ranking Oakland Police Department supervisors, DOES 26-50, and/or each of them resulted in the deprivation of Plaintiffs' constitutional rights including, but not limited to: the right to not be deprived of life, liberty or property without due process of the law, as guaranteed by the Fourteenth Amendment to the United States Constitution; and the right of access to court, as guaranteed by the First Amendment to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

**(Conspiracy to Violate Civil Rights)**

**(42 U.S.C. § 1985)**

(All Plaintiffs Against Defendants HOLMGREN, FAETH, TURNER, STRATTON, BUDGIN, and DOES 1-50)

43. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 42 of this Complaint.

44. In doing the acts complained of herein, Defendants HOLMGREN, FAETH, TURNER, STRATTON, BUDGIN and DOES 1-50 and each of them acted in concert and conspired to violate Plaintiffs' federal civil rights of access to court and right to bring forth criminal charges and civil remedies against assailants known to the Oakland Police Department.

45. Defendant HOLMGREN, FAETH, TURNER, STRATTON, BUDGIN and DOES 1-50 and each of them had knowledge of the wrongs conspired to be done and committed and had the power to prevent or aid in preventing the commission of the same.

46. After the unwarranted attack on the Cortez family by Defendant Oakland Police Officers, Defendants HOLMGREN, FAETH, TURNER, STRATTON, BUDGIN and DOES 1-50 conspired for the purpose of impeding, hindering, obstructing, and defeating, the due course of justice with regard to the true identity of the Defendant assailants, for the purpose of preventing said officers from being held criminally liable for their actions, with the intent to deny the Cortez family access to the court and the ability to pursue criminal and civil remedies.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## THIRD CAUSE OF ACTION
**(Negligence)**

(All Plaintiffs Against Defendants HOLMGREN, FAETH, TURNER, STRATTON, BUDGIN, and DOES 1-25)

47. Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through 46 of this Complaint, except for any and all allegations of intentional, malicious, extreme, outrageous,

wanton, and oppressive conduct by defendants, and any and all allegations requesting punitive damages.

48. Defendant HOLMGREN, FAETH, TURNER, STRATTON, BUDGIN, and DOES 1-25 inclusive, by and through their respective agents and employees, caused the injuries to the Cortez family, as a result of their negligent conduct and/or negligent failure to act as set-forth herein.

49. As an actual and proximate result of said Defendants' negligence, Plaintiffs sustained pecuniary loss and pain and suffering, in an amount according to proof at trial.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### (Violation of Right To Enjoy Civil Rights)
### (Violation of CALIFORNIA CIVIL CODE §52.1)

(All Plaintiffs Against Defendants HOLMGREN, FAETH, TURNER, STRATTON, BUDGIN, and DOES 1-25)

50. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 49 of this Complaint.

51. Defendants DOES' above-described conduct constituted interference, and attempted interference, by intimidation and coercion, with the Cortez family's peaceable exercise and enjoyment of rights secured by the Constitution and laws of the United States and the State of California, in violation of California Civil Code §52.1.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## FIFTH CAUSE OF ACTION

### (Battery)

(All Plaintiffs Against Defendants FAETH and DOES 1-25)

52. Plaintiffs re-alleges and incorporates by reference paragraphs 1 through 51 of this complaint.

53. Defendants' above-described conduct constituted a battery.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SIXTH CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress)

(All Plaintiffs Against Defendants HOLMGREN, FAETH, TURNER, STRATTON, BUDGIN, and DOES 1-25)

54. Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through 53 of this Complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by Defendants, and any and all allegations requesting punitive damages.

55. The wrongful conduct of Defendant Officers and DOES 1-25 inclusive, as set forth herein, constitutes negligent conduct, done with conscious disregard for the rights of the Cortez family.

56. As a proximate result of Defendant Officers and DOES 1-25's inclusive, negligent conduct, the Cortez family has suffered severe emotional and mental distress from being attacked and/or witnessing the attack on Mr. and Mrs. Cortez by Defendant Officers and DOES 1-25 WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

(All Plaintiffs Against Defendants HOLMGREN, FAETH, TURNER, STRATTON, BUDGIN, and DOES 1-50)

57. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 56 of this Complaint.
58. Defendants' above-described conduct was extreme, unreasonable and outrageous.
59. In engaging in the above-described conduct, Defendants intentionally ignored or recklessly disregarded the foreseeable risk that Plaintiffs would suffer extreme emotional distress as a result of being terrorized, assaulted and threatened.

WHEREFORE, Plaintiffs pray for relief, as hereinafter set forth.

## JURY DEMAND

60. Plaintiffs hereby demand a jury trial in this action.

# PRAYER

WHEREFORE, Plaintiffs pray for relief, as follows:

1. For general damages in a sum to be determined according to proof;
2. For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;
3. For punitive and exemplary damages against Defendants in amounts to be determined according to proof;
4. For reasonable attorney's fees pursuant to statute;
5. For any and all statutory damages allowed by law;
6. For cost of suit herein incurred; and
7. For such other and further relief as the Court deems just and proper.

**LAW OFFICE OF JOHN L. BURRIS**

Dated: October 28, 2016        /s/ *John L. Burris*
**JOHN L. BURRIS, Esq.**
Attorneys for Plaintiffs
OLGA CORTEZ, et al.