UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLGA CORTEZ, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF OAKLAND, et al.,<br><br>    Defendants. | Case No. 16-cv-06256-TEH<br><br>**ORDER GRANTING MOTIONS TO DISMISS** |

This matter comes before the Court on motions to dismiss brought by Defendants City of Oakland and Ronald Holmgren and by Defendants Joe Turner and Bryan Budgin. The Court finds these motions suitable for resolution without oral argument, *see* Civil L.R. 7-1(b), and now GRANTS the motions for the reasons discussed below.

**BACKGROUND**

Plaintiffs Olga and Nemesio Cortez filed this case, on behalf of themselves and their two minor children, to recover damages following an incident at their home on December 7, 2015. Plaintiffs allege that Defendant Cullen Faeth, who was apparently intoxicated, banged on the Cortez's front door at approximately 9:30 PM and repeatedly tried to gain entry despite being told by Olga and Nemesio to leave through the closed door. Believing that Faeth was trying to rob them, Olga called the Oakland Police Department for assistance while Nemesio stepped outside to try to detain Faeth.

Faeth allegedly kicked Nemesio multiple times in the stomach and, as Olga walked nearby them, grabbed Olga in a bear hold and knocked her to the concrete. Olga was wearing only a short bathrobe at the time, so Faeth's actions caused her nude lower body to be exposed. Nemesio pulled Faeth off of Olga and held him down, with the assistance of neighbors, until police arrived. Unnamed officers took Faeth into custody, took

1    statements from Olga and Nemesio and their neighbors, and took photographs of Olga's
2    and Nemesio's injuries before leaving the scene.
3      Plaintiffs also allege that a second man, whom they have yet to identify, ran from
4    their backyard up their driveway as Olga and Nemesio were following Faeth outside their
5    home.  This second person is alleged to have "made a gesture simulating a gun pointed at
6    [Olga] from underneath his shirt."  Compl. ¶ 23.  This person was not detained by police
7    but, instead, allegedly ran up the street before speaking to an officer in a patrol car and
8    being permitted to leave.  He allegedly left the scene in a non-police vehicle.  Plaintiffs
9    believe that one of Defendants Joe Turner, Trevor Stratton, and Bryan Budgin was the
10   unnamed second man, and that the other two Defendants were in that non-police vehicle.
11     Plaintiffs allege that, at 12:30 AM on December 8, three unnamed Oakland Police
12   personnel returned to the Cortez home.  They allegedly asked Olga and Nemesio to explain
13   what happened, "while strongly suggesting that Mr. and Mrs. Cortez were mistaken in
14   their understanding of the events."  *Id.* ¶ 28.  Around the same time, unnamed Oakland
15   Police officers allegedly visited Plaintiffs' neighbors to review the owner's surveillance
16   video.
17     Plaintiffs further allege that five Oakland Police officers and supervisors returned to
18   the Cortez home three hours later "and wanted Mr. and Mrs. Cortez to reenact the incident.
19   The officers wanted Mr. and Mrs. Cortez to be interviewed separately.  During Olga
20   Cortez's interview, officers were trying to get her to change her statement and relay the
21   events in a way that would be more favorable to the man who was arrested."  *Id.* ¶ 31.
22   Officers also allegedly visited the Cortez's neighbors again "and asked the owner's minor
23   child to identify a possible suspect," who "did not even remotely resemble either of the
24   men involved or described."  *Id.* ¶ 30.
25     Olga allegedly spoke to numerous unnamed Oakland Police over a period of two
26   weeks following the incident, and they all "refused to provide her any additional
27   information about the incident."  *Id.* ¶ 32.  She eventually spoke with Defendant Roland
28   Holmgren, an Oakland Police lieutenant, who allegedly "told Mrs. Cortez that the two men

United States District Court
Northern District of California

were City of Oakland officers who 'mistakenly went to her house' looking for a party." *Id.* Holmgren allegedly "brushed off" Olga's concerns about "her family's terror and how she felt violated," "said the officers were just 'being silly,'" and promised a personal apology that never came. *Id.*

Plaintiffs ultimately learned that Faeth, Turner, Stratton, and Budgin were all Oakland Police officers at the time of the incident. All four were placed on paid leave, and Faeth was charged with battery and trespass. Plaintiffs have yet to learn the identity of the second person who is alleged to have entered their property and made a pointing gun gesture.

Plaintiffs allege that they suffered physical and emotional injuries as a result of these events. The complaint includes seven causes of action. The first, violation of 42 U.S.C. § 1983, is alleged against the Defendant City of Oakland and Does 26-50 and is brought under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).[1] The fourth is a battery claim against Defendant Faeth and Does 1‑25 only. The remaining causes of action – violation of 42 U.S.C. § 1985, negligence, violation of California Civil Code section 52.1, negligent infliction of emotional distress, and intentional infliction of emotional distress – are brought against all individual defendants.

The City and Holmgren have moved to dismiss all claims against them, as have Turner and Budgin in a separately filed motion.

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." In ruling on a motion to dismiss, courts must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). However, courts are not "bound to

---

[1] Plaintiffs do not allege any specific actions by any of the fifty Doe Defendants.

3

accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Dismissal of claims that do not meet this standard should be with leave to amend unless "it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008).

**DISCUSSION**

**I.    *Monell* Claim**

The Court first considers Plaintiffs' § 1983 claim against Defendant City of Oakland. Plaintiffs in this case contend that their First Amendment right of access to the courts and their Fourteenth Amendment right to substantive due process were violated, and that the City is liable for these violations under *Monell*, 436 U.S. 658.

The Court need not decide at this time whether Plaintiffs' allegations would be sufficient to support either of the two alleged constitutional violations because Plaintiffs have failed to allege sufficient facts to make municipal liability plausible. Plaintiffs have done nothing more than make conclusory allegations: for example, that:

> Plaintiffs are informed and believe and thereon allege that City of Oakland and DOES 26-50, and/or each of them, approved, ratified, condoned, encouraged, sought to cover up, and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by the Oakland Police Department, for officers both on and off duty, which brought about Defendants HOLMGREN, FAETH, TURNER,

4

> BUDGIN, STRATTON and DOES 1-50 unlawfully attacking the Cortez family and/or subsequently attempting to conceal the identity of the Oakland Police Officers responsible for engaging in criminal acts against the Cortez family.

Compl. ¶ 39. Plaintiffs' own opposition recognizes that such "bare allegation[s]" are insufficient to survive a motion to dismiss. Opp'n at 7 (citation omitted). Accordingly, Plaintiffs' *Monell* claim is dismissed with leave to amend.

## II.   42 U.S.C. § 1985 Conspiracy Claim

Plaintiffs' second cause of action, for conspiracy to violate civil rights under 42 U.S.C. § 1985, fares no better. "A claim under this section must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). Like Plaintiffs' *Monell* claim, their § 1985 claim relies on conclusory allegations without any factual specificity. For example, Plaintiffs allege that "Defendants HOLMGREN, FAETH, TURNER, STRATTON, BUDGIN, and DOES 1-50 and each of them acted in concert and conspired to violate Plaintiffs' federal civil rights of access to court and right to bring forth criminal charges and civil remedies against assailants known to the Oakland Police Department." Compl. ¶ 44. This is inadequate to state a claim, and Plaintiffs' § 1985 claim is therefore also dismissed with leave to amend.

If Plaintiffs choose to amend this claim, they shall make clear which clause or clauses of § 1985 they allege Defendants violated.

## III.   State Law Claims

Finally, Defendants Holmgren, Turner, and Budgin move to dismiss all state law claims against them. The only non-conclusory allegations against Holmgren are that he:

> told Mrs. Cortez that the two men were City of Oakland officers who "mistakenly went to her house" looking for a party. Olga Cortez relayed her family's terror and how she felt violated, but Lieutenant Holmgren brushed off her concerns and said the officers were just "being silly." Lieutenant Holmgren promised Olga Cortez a personal apology once the investigation was complete; [sic] an apology that never came.

5

Compl. ¶ 32. Plaintiffs do not argue that these allegations are sufficient to support their state law claims against Holmgren but instead argue only that the conspiracy allegations support their state law causes of action. Since the Court has dismissed Plaintiffs' conspiracy claim, the Court likewise dismisses the state law causes of action against Holmgren with leave to amend.

The only non-conclusory allegations against Turner and Budgin are that they might have been present in a non-police vehicle entered by an as-yet-unidentified man who was "running up the middle of the street," *id.* ¶ 27, and that they "were later identified" as "other involved parties," *id.* ¶ 33.[2] Plaintiffs do not argue that these allegations are sufficient to support their state law claims against these Defendants. Instead, Plaintiffs speculate in their opposition that Turner or Budgin was the unidentified person who, as alleged in the complaint, "ran up [Plaintiffs'] driveway" and "made a gesture simulating a gun pointed at her from underneath his shirt" as he passed by Olga Cortez. *Id.* ¶ 23. Plaintiffs then argue that these actions of the unidentified person, along with other acts not alleged in the complaint, are sufficient to support their state law causes of action against both Turner and Budgin. However, they have cited no authority for the proposition that allegations against an unnamed person can support causes of action against two named individuals, nor can the Court consider allegations not contained in the complaint. Accordingly, the state law causes of action against Turner and Budgin are dismissed with leave to amend.

**CONCLUSION**

Based on all of the above, the Court GRANTS both the motion to dismiss by Defendants City of Oakland and Holmgren and the motion to dismiss by Defendants Turner and Budgin. All claims against these Defendants are dismissed with leave to

---

[2] The complaint also alleges that, "Two weeks prior to this incident Sergeant Joe Turner shot and killed Richard Perkins, under suspicious circumstances," Compl. ¶ 33, but this allegation is not relevant to Plaintiffs' asserted state law claims against Turner.

6

amend. If Plaintiffs wish to file an amended complaint, they must do so on or before **March 10, 2017**. Any dismissed claims not alleged in a timely amended complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: 02/09/17  _____
THELTON E. HENDERSON
United States District Judge